**Judith HOGAN, Plaintiff–Appellant,**

v.

**NEC INSURANCE, INC., Defendant–Respondent.**

**No. 61835.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 2, 1993.

Edward J. Hanlon, St. Louis, for plaintiff-appellant.

Eckelkamp, Eckelkamp, Wood and Kuenzel, Steven P. Kuenzel, Washington, for defendant-respondent.

PUDLOWSKI, Judge.

Plaintiff-appellant, Judith Hogan, appeals an order of the Circuit Court of Franklin County denying her commissions on insurance policies she had allegedly earned before her termination. Appellant contends she had done all that was necessary to earn certain commissions on insurance policies before her termination even though the premiums on the policies from which her commissions were derived were not paid until after her termination. We affirm.

In March 1987, respondent, NEC Insurance, Inc. (NEC), hired appellant on a part time basis for an hourly wage plus a 40% commission on new business. The agreement was reduced to writing. In May 1989, appellant's job description was modified to a "customer service representative" for which she was compensated with an annual salary of $18,800 plus 60% of the first year's premiums on new business. The new employment contract was not reduced to writing.

In April 1990, NEC terminated appellant on one day's notice. Both parties agreed that appellant's termination was due to a general reduction in NEC's workforce and not from dissatisfaction with appellant's performance of her duties. Appellant was given a total of six weeks pay as part of her severance package totaling $1568.

On October 1, 1990, appellant filed suit claiming that she was entitled to $3500 in commissions on insurance policies which appellant had solicited but whose premiums were due after her termination. NEC countered that appellant was never promised she would receive commissions after her departure.

At trial, NEC's president testified that appellant was never promised that her right to collect commissions would continue after her termination, that there was no provision in NEC's employment manual for such payment and that any payment made to appellant for commissions after her termination was made in error. Appellant testified that she was never told that her commissions would cease after she was terminated. Appellant claimed she was entitled to $3500 in commissions on new insurance policies created in the months prior to her termination.

Appellant introduced client history records which she claimed tended to show she was entitled to post-termination commissions for pre-termination business. The same records were used by NEC to demonstrate that the accounts were in a constant state of flux characterized by cancellations, lapses, and renewals by other NEC employees. The renewals were often with insurance carriers other than those which appellant had written. There was testimony that certain clients appellant claimed to have earned commissions on were actually long term clients on which appellant had only servicing responsibilities.

From the evidence adduced, the trial court concluded the following: Even though appellant in good faith believed that her right to receive commissions would continue for twelve months after her termination, NEC's belief that the commissions would cease immediately was a more reasonable interpretation of the employment agreement because of the existence of a severance package and the lack of any evidence of industry custom. The trial court further noted that the nature of NEC's business-characterized by frequent client changes, cancellations, renewals with new insurers, and policy lapses through defaults-militates against payment of post termination commissions because of the difficulty of advance calculation. This factor, in turn, is evidence that NEC would not agree to pay post termination commissions. From the evidence, the trial judge concluded that appellant had no express or implied contract right to collect commissions after her termination.

In this court tried case, our review is that prescribed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ In her sole point on appeal, appellant contends that as a "finder" of business, she has a right to commissions when she finds the business and that termination cannot extinguish that right. In support of her point, appellant cites *E.F. Higgins, Inc. v. Kuhlman Die,* 663 S.W.2d 318 (Mo.App. 1983). *Higgins* distinguishes between a manufacturer's representative with servicing responsibilities and a finder. A manufacturer's representative with servicing responsibilities loses her right to collect commissions on pre-termination business upon termination. *Id.* at 320–21. A finder has a continuing right to the commissions on business even after termination. *Id.* at 321. The rational behind this distinction is that a finder has completed all of the work that needs to be completed and the right to payment vests upon the finding of the business, while a manufacturer's representative has continuing duties to service an account. In *Higgins,* this court noted that the distinction could be modified by contract. *Id.*

■ In the instant case, the trial court found that appellant had no contractual right to collect commissions after her termination. We believe that even apart from the contractual aspect of appellant's employment, sufficient evidence was adduced from which the court could find that appellant's work was more in the nature of a manufacturer's representative than a finder. Appellant was a "customer service representative" who performed ministerial functions concerning accounts. After appellant had departed, those functions had to be carried on by another person. There was evidence that several of the accounts from which appellant claimed to be entitled commissions were actually continuing accounts which appellant merely serviced. Several other accounts which appellant claimed to be entitled to were canceled or modified. There was also evidence that follow-up service was performed on appellant's accounts after she had departed. Because of the nature of appellant's duties, the trial court could properly conclude that appellant was not entitled to the commissions after her termination.

We affirm.

CRANDALL, P.J., and GRIMM, J., concur.